### NATHANIEL CUSHING vs. CITY OF BOSTON.

Suffolk. Nov. 12, 22, 1879. — Feb. 9, 1880. MORTON & SOULE, JJ., absent.

The St. of 1824, c. 16, providing that door-steps shall not project into a street of Charlestown for more than a given distance, is constitutional, and steps erected within that distance do not constitute a defect in the highway for which the city is liable.

Under the Gen. Sts. c. 19, § 13, authorizing cities to "make such rules and regulations for the erection and maintenance of balustrades, or other projections upon the roofs or sides of buildings therein, as the safety of the public requires," a city has no power to pass an ordinance prohibiting the maintenance of door-steps within the limits of a highway, which are lawfully there; nor is such power conferred by its charter, which authorizes it to make "all such salutary and needful by-laws, as towns, by the laws of this Commonwealth, have power to make."

TORT for personal injuries caused by an alleged defect in Bartlett Street, in that part of Boston formerly Charlestown. Writ dated June 24, 1875. After the former decision, reported 124 Mass. 434, the case was tried in the Superior Court, without a jury, before *Allen*, J., who found for the plaintiff in the sum of $2000; and the defendant alleged exceptions.

*E. P. Nettleton*, for the defendant.

*W. Gaston & C. L. B. Whitney*, (*C. S. Lincoln* with them,) for the plaintiff.

ENDICOTT, J. The facts now presented in this case, in regard to the position, construction and condition of the steps which constituted the alleged defect in the highway, do not differ from those stated in the former bills of exceptions, as reported in 122 Mass. 173, and 124 Mass. 434. On both occasions it was held that, under the St. of 1824, c. 16, § 3, these steps, which projected less than three feet into the highway, and were properly constructed and in good repair, could be lawfully maintained by the abutter, were not a nuisance, and did not constitute an illegal obstruction in the highway. Whether they rendered the highway unsafe for a traveller in the night-time, using due care, was entirely immaterial: they were authorized by law; the defendant could not remove them; and was under no obligation to place railings or other safeguards around them for the protection of travellers. It was also held, that it was within the power of the Legislature to make this provision in regard to the erection

of door-steps within the limits of the highways in Charlestown, and we find nothing in the argument now addressed to us by the plaintiff which leads us to reconsider that question. 122 Mass. 173.

When the case was last before us, it appeared that, in 1869, the city of Charlestown passed an ordinance, which was a reenactment of a similar ordinance passed in 1849, prohibiting the erection and maintenance of door-steps in the highway without the permission of the mayor and aldermen; but, for reasons then stated, it could not properly form any part of the defendant's bill of exceptions. 124 Mass. 434. It is now before us, and the question is presented, whether, under the Gen. Sts. *c.* 19, § 13, (reënacting the St. of 1848, *c.* 278,) by which cities are authorized to make "such rules and regulations for the erection and maintenance of balustrades, or other projections upon the roofs or sides of buildings therein, as the safety of the public requires," Charlestown had the power to pass an ordinance prohibiting the maintenance of door-steps in the highway, which were lawfully there under the provisions of the St. of 1824, *c.* 16, § 3. In this connection, it is also to be noticed that the city of Charlestown, under its charter, was empowered to make "all such salutary and needful by-laws, as towns, by the laws of this Commonwealth, have power to make and establish." St. 1847, *c.* 29, § 20.

We are of opinion that these statutes did not authorize Charlestown to pass such an ordinance. The power conferred by the Gen. Sts. *c.* 19, § 13, is limited to "balustrades or other projections upon the roofs or sides of buildings;" and undoubtedly, under this provision, they may be allowed or forbidden as each city may determine. The words "balustrades or other projections," as applied to the roof of a building, would seem to refer to those additions or structures upon the roof, which might under certain circumstances render a highway unsafe for travellers; but it is unnecessary in this case to determine precisely what projections on a roof are included in these words. As applied to the sides of a building, which is the only matter to be considered here, the words "other projections" clearly refer to those portions of, or attachments to, the sides, which are near the line of a highway, or which project over and therefore in

one sense into the highway, such as balconies, canopies, windows, cornices, gutters, signs, or other additions supported by the building itself, which do not obstruct the travel on the highway. These may project so far as to be insecure, or, by reason of the use to which they may be put, or through want of proper repair, may fall and endanger the safety of travellers; and the Legislature might well consider them a proper subject of regulation by the authorities of cities.

But the words of the statute are not broad enough to authorize cities to make rules and regulations for the erection and maintenance of door-steps within the actual limits of a highway. Such door-steps, though connected with and a part of the building, are not necessarily supported by it, and are not, properly speaking, projections on the side of it, but are rather structures erected in and occupying a part of the highway itself. The fair construction of the language of this section is, that it intends to deal with those parts of a building which may project near or over the line of a highway, and which, if not properly constructed and maintained, may endanger the safety of the public; and that it does not attempt to deal with those additions to or parts of a building which may occupy the highway itself, or obstruct travel thereon, and thus constitute a nuisance in the highway, if not authorized by law. In other words, cities are authorized to regulate the erection and maintenance of such projecting parts of a building, standing upon or near the line of a highway, which do not in any way obstruct the use of the highway, or constitute a defect therein, although under some circumstances they may endanger the safety of the public; but they are not authorized to regulate the erection and maintenance of permanent structures or additions to a building, which stand in the way itself, or create an obstruction therein.

There are grave reasons why the Legislature should not give cities authority to permit door-steps and other structures connected with buildings to encroach and to obstruct travel upon a highway, which all the citizens of the Commonwealth have the right to use; thus leaving to the discretion of a municipal corporation to determine to what extent the highways within its limits may be permanently encroached upon and devoted to private uses. In the absence of express words, or the use of such

words as by necessary implication include such a grant of power, we cannot presume it was intended to be conferred. These considerations also afford an answer to the argument that Charlestown had authority to pass this ordinance under the power conferred by its charter to make such by-laws as towns may establish.

The case of *Commonwealth* v. *Goodnow*, 117 Mass. 114, is relied on as an authority by the plaintiff. In 1799, an act was passed prohibiting any person from erecting and maintaining any bow window, which should project more than one foot from the front of his house into any street in the town of Boston; thereby by implication allowing a bow window to project not more than one foot. St. 1799, *c.* 31; 2 Mass. Spec. Laws, 340. An ordinance was passed by the city of Boston under the authority conferred by Gen. Sts. *c.* 19, § 13, prohibiting all persons under a penalty from constructing any window which should project into the street. A bow window is clearly a projection on the side of a building, and, the city having authority to make rules and regulations on that subject, it was held that the ordinance was valid. If the city had passed no ordinance on that subject, the statute of 1799 would have remained in force; but, having passed an ordinance relating to the projection of windows, the provision of the statute of 1799 was superseded.

But this has no application to the case at bar. The city of Charlestown had no authority to pass an ordinance regulating the erection and maintenance of door-steps in the highway; and the provisions in regard to door-steps in Charlestown, contained in the St. of 1824, *c.* 16, § 3, were not superseded. That statute was therefore in force at the time of the alleged injury.

*Exceptions sustained.*