THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* I. G. WOLF, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* " GEORGE " JENNINGS, Appellant.

County Court, Nassau County, June 2, 1926.

Municipal corporations — ordinances — ordinance passed by village under Village Law, § 90, subd. 26, prohibiting owner of real property from posting, erecting or maintaining on his property any advertisement in form of bill or sign, excepted " signs solely advertising real property to be for sale or for rent " — ordinance cannot be sustained on ground that it promotes æsthetic aspect of village — ordinance discriminatory and unwarranted exercise of police power.

An ordinance enacted by the village of Kings Point, pursuant to subdivision 26 of section 90 of the Village Law, making it " unlawful for any person to post,

erect or maintain any advertisement in the form of a bill or sign or other device or display within " said village, and for any owner of real property therein to permit " the posting, erection or maintenance on his property of any advertisement in such form," but permitting the erection of signs solely advertising real property to be for sale or for rent, is an unwarranted exercise of the police power of the State, and because it would result in depriving a property owner of the free use and enjoyment of his property its legality cannot be sustained since it is neither calculated to remedy any existing evil nor to promote public health, public safety or the general welfare. Moreover, it is discriminatory in that it permits one kind of advertising and prohibits all other kinds.

Nor may the ordinance be sustained on the ground that it tends to promote the æsthetic aspect of the village, since it is altogether possible for a property owner to erect a billboard or sign which would be offensive to the eye.

APPEAL from a judgment of conviction in the Police Court of the village of Kings Point on December 7, 1925, convicting the above-named defendant Isaac G. Wolf of a violation of a village ordinance and also convicting the above-named defendant " George " Jennings of the same offense.

*Erastus J. Parsons*, for the appellants.

*Elvin N. Edwards, District Attorney [Charles I. Wood, Assistant District Attorney*, of counsel], for the respondent.

*Edward S. Bentley*, as *amicus curiæ*.

SMITH, J. The information charged the defendants with violating a certain ordinance of the said village of Kings Point known as " Number Five " of the ordinances of the said village.

The facts upon which the information was laid were that the defendants erected upon certain property within the corporate limits of said village, a sign shown on " People's Exhibit Number Two," which was a real estate sign. At the trial it appears there was little dispute as to the facts of the erection of the sign and its location or that the defendants erected it; so that in so far as the facts contained in the charge against the defendants are concerned, the evidence adduced at the trial sustained the charge. A large amount of testimony was taken in the nature of expert testimony, particularly that given by Mr. Albert S. Bard, which was of an expert character and consisted largely of his opinion regarding signs and billboards, but which testimony in my view was immaterial and should have been excluded. The particular charge against the defendants was of such a nature that expert testimony was unnecessary to a determination of the issue.

The village of Kings Point, the proof at the trial showed, is made up exclusively of private residences. It is about three square miles in extent and contains a population of about 1,200. The particular ordinance under which the defendants were tried was

entitled " An Ordinance in Relation to the Posting of Bills " and provided as follows:

" Section 1. It shall be unlawful for any person to post, erect or maintain any advertisement in the form of a bill or sign or other device or display within the Village of Kings Point and for any owner of real property in the Village of Kings Point to permit the posting, erection or maintenance on his property of any advertisement in such form; except that signs solely advertising real property to be for sale or for rent may be placed on the real property so advertised, not nearer than twenty-five feet to a public street or highway or; in the case of developed property, not nearer to such street or highway than the building line thereof, provided that no such sign shall be so placed as to obstruct the clear view of the highway from any direction, and further provided that no such sign shall be of greater dimensions that four feet by four feet."

It was contended by defendants that the ordinance in question was invalid in that the effect of said ordinance was to deprive owners of the free use and enjoyment of their property; so that the question upon this appeal relates solely to the legality of the ordinance in question. The learned trial judge in the court below in sustaining the validity of the ordinance based his conclusions upon the assumption that ordinances can be sustained on æsthetic grounds alone.

The authority for the ordinance as contended by the respondent is found in subdivision 26 of section 90 of the Village Law, which provides that the board of trustees has power " to regulate or prohibit the posting of bills."

Counsel for the respondent and for the appellants have been very industrious in gathering and submitting upon this appeal many cases involving questions as to the validity of ordinances and zoning regulations both in the State of New York and many decisions rendered elsewhere in other States, but I do not find any decision in the State of New York where the validity of an ordinance has been sustained solely upon æsthetic grounds. It is true from the reading of many decisions in recent years relative to the subject of zoning and ordinances, that there seems to be a disposition upon the part of our higher courts to extend the police power of the State to meet the changing conditions brought about by increased population and general use of automobiles.

In the matter of regulating and restricting the use the owner may have of his private property the courts have long recognized the authority to restrict that use under the police power. In the case of *Matter of Wulfsohn* v. *Burden* (241 N. Y. 288, 298), Chief Judge HISCOCK, writing the opinion, uses this significant language: " Of

course zoning regulations are an exercise of the police power and as we approach the decision of this question we must realize that the application of the police power has been greatly extended during a comparatively recent period and that while the fundamental rule must be observed that there is some evil existent or reasonably to be apprehended which the police power may be invoked to prevent and that the remedy proposed must be generally adapted to that purpose, the limit upon conditions held to come within this rule has been greatly enlarged. The power is not limited to regulations designed to promote public health, public morals or public safety or to the suppression of what is offensive, disorderly or unsanitary but extends to so dealing with conditions which exist as to bring out of them the greatest welfare of the people by promoting public convenience or general prosperity."

In my view it is difficult to understand how the ordinance in question, which prevents all forms of billboards and signs for advertising purposes except signs solely advertising real· property for sale or to let of certain dimensions, could promote public convenience or general prosperity.

To sustain the ordinance in question we must find that it comes within the police power of the State; that is to say that it was necessary either for the (1) public health; (2) public safety; (3) public morals; or (4) general welfare.

In the case of *People ex rel. Wineburgh Adv. Co.* v. *Murphy* (195 N. Y. 126, 131) it is stated: " The police power, so difficult to define, but so frequently invoked, is confined to such reasonable restrictions and prohibitions as are necessary to guard public health, morals and safety, and to conserve public peace, order and the general welfare. Regulations and ordinances within such general definition are valid. The city may make and enforce such regulations and ordinances, although they interfere with and restrict the use of private property."

Further in the same opinion (at p. 132) it is stated: " An ordinance drawn to protect the public from physical danger should in terms bear some evidence of such purpose."

It is not contended by respondents that the ordinance in question in this case relates to public health, public safety or public morals, but that it comes under the heading " general welfare " and is based upon æsthetic consideration only.

In the case *Matter of Isenbarth* v. *Bartnett* (206 App. Div. 546), in which case a zoning ordinance was held invalid, we find at the bottom of page 548 the following significant language: " The Court of Appeals in *People ex rel. Sheldon* v. *Board of Appeals*

(234 N. Y. 484) has lately dealt with the factors which would justify zoning a neighborhood as 'business.' These factors have been sacrificed to the purely æsthetic purpose of preserving a vista to private property, which is a matter to be secured so far as it may by private covenant, without the backing of the police power. In *People ex rel. Lankton* v. *Roberts* (90 Misc. Rep. 439, 442; affd., 171 App. Div. 890) the court quoted with approval Judge Dillon's treatise on Municipal Corporations (5th ed. § 695), giving that jurist's opinion that the police power cannot, for æsthetic purposes, be used to deprive the owner of property of its full beneficial use, and that, in short, zoning or similar legislation is not to be exercised for purposes other than health, safety, convenience and public welfare of the people at large."

It is undoubtedly true that the modern trend of decision in our higher courts is to sustain the rule that private right must give way to public necessity and welfare, yet I think it is very doubtful if the enforcement of the ordinance in question would tend to accomplish that purpose. The ordinance is discriminatory in that it permits erection of billboards and signs for one specific advertising purpose only, to wit, for sale or for rent of real estate, and prohibits all other advertising in the form of a bill or sign or other device or display, so that a property owner might put a plate containing his name on the front door providing it was not used for advertising purposes, but should he happen to be a physician and desire placing after his name the letters "M. D.," that, I believe, would be a violation of the ordinance, or should he place after his name the words "notary public" he would also be violating the ordinance. Furthermore, the ordinance does not prohibit the erection of billboards or signs except for advertising purposes, so that it would, therefore, not be a violation to erect a sign or billboard of any size or dimension containing any kind of picture or written matter so long as it was not used for advertising purposes.

I am of the opinion that the ordinance cannot be sustained upon the ground that it tends to promote the æsthetic aspect and thus be in keeping with the public welfare. "Æsthetic" relates to that which is beautiful or in good taste and under the ordinance in question it is altogether possible for the property owner to erect a billboard or sign which would be offensive to the eye and to the sensibilities which did not contain any advertising matter whatsoever. It does not follow because a sign or billboard is used for advertising purposes that it is not beautiful. The commercial artist has made great advancement in artistic design of advertising matter, so much so that I think it could not be seriously contended that many of the display advertising signs of

the present day do not have a strong appeal to the artistic sense of most people. There are many things upon the landscape more offensive to the artistic sense than advertising matter; a slovenly kept lawn or door yard, dilapidated buildings, untidy and unclean premises frequently present an appearance quite as shocking to the æsthetic sense as any billboard or sign used for advertising purposes.

Advertising has long been recognized as a legitimate and proper business and it has also been long recognized that the property owner may use his property for advertising purposes, such privilege being in accord with the right to free use and enjoyment of his property, subject of course to such reasonable restrictions as may be necessary to maintain and promote public health, public safety, public morals and general welfare.

I am of the opinion that the ordinance in question is an unwarranted exercise of the police power of the State and would result in depriving the property owner of the free use and enjoyment of his property and that its legality cannot be sustained for the following reasons: (1) That it is not calculated to remedy any existing evil; (2) that it does not tend to promote public health, public safety, public morals or general welfare; (3) that it is discriminatory in that it permits one kind of advertising and prohibits all other kinds.

The judgments of conviction should be reversed and the fines remitted, and I order accordingly.