Joseph Perlmutter et al., Copartners, under the Firm Name of Perlmutter Furniture Company, Respondents, *v.* Frederick S. Greene, as Superintendent of Public Works of the State of New York, et al., Appellants.

(Argued June 15, 1932; decided July 19, 1932.)

*John J. Bennett, Jr., Attorney-General* (*Henry Epstein* and *Timothy F. Cohan* of counsel), for appellants. It is

the duty of the State to keep the highways safe for the traveling public, and the erection of the screen is a legitimate performance of this duty. (*Johnson* v. *State of New York,* 104 Misc. Rep. 399; *Packer Corp.* v. *State of Utah,* 52 Sup. Ct. Rep. 273; *Cohen* v. *Mayor of New York,* 113 N. Y. 532; *Fifth Ave. Coach Co.* v. *City of New York,* 194 N. Y. 19; 221 U. S. 467.) The plaintiffs have no vested right that their sign shall be read from the highway. (*Root* v. *Conkling,* 199 App. Div. 90; *Story* v. *New York Elev. R. R. Co.,* 90 N. Y. 122; *Lahr* v. *Metropolitan R. R. Co.,* 104 N. Y. 268; *Kane* v. *New York Elev. R. R. Co.,* 125 N. Y. 164.) The plaintiffs have no independent easement of prospect or view. (*Aldred's Case,* 9 Coke, 57-b; *Brown-Brand Realty Co.* v. *Saks & Co.,* 126 Misc. Rep. 336; 218 App. Div. 827; *Bradley* v. *Degnon Contracting Co.,* 224 N. Y. 60; *First Nat. Bank* v. *Tyson,* 133 Ala. 459; *Field* v. *Barling,* 149 Ill. 556; *Hallock* v. *Scheyer,* 33 Hun, 111.) Recognition should be accorded æsthetic considerations in determining questions of public welfare under the police power. (*State ex rel. Civello* v. *New Orleans,* 154 La. 271; *State* v. *Roberge,* 141 Wash. 74; *General Outdoor Advertising Co.* v. *City of Indianapolis Department of Public Works,* 172 N. E. Rep. 312; *Cochrane* v. *Preston,* 109 Md. 220; *Ware* v. *Wichita,* 113 Kan. 153; *State ex rel. Carter* v. *Harper,* 182 Wis. 148; *Walnut & Quince Streets Corp.* v. *Mills,* 154 Atl. Rep. 29; *Varney* v. *Williams,* 155 Cal. 318; *Welch* v. *Swasey,* 214 U. S. 91; *Matter of Clinton Avenue,* 57 App. Div. 166; *Matter of Wulfsohn* v. *Burden,* 241 N. Y. 288; *State* v. *Houghton,* 144 Minn. 13; *People* v. *Sterling,* 128 Misc. Rep. 650.)

*John E. Mack* and *Edward A. Conger* for respondents. The owner of land abutting the highway has easements of light and air, access, prospect and view, which cannot be taken without just compensation. (*Story* v. *N. Y. Elev.*

R. R. Co., 90 N. Y. 122; *Lahr* v. *Metropolitan Elev. R. R. Co.*, 104 N. Y. 268; *Muhlker* v. *Harlem R. R. Co.*, 197 U. S. 544; *Kane* v. *N. Y. Elev. R. R. Co.*, 125 N. Y. 164; *Bohm* v. *Metropolitan Elev. R. R. Co.*, 129 N. Y. 576; *Hallock* v. *Scheyer*, 33 Hun, 111; *Brown-Brand Realty Co.* v. *Saks & Co.*, 126 Misc. Rep. 336; 218 App. Div. 827.) The real purpose of the erection of the shield by defendants is to preserve the æsthetic surroundings and not to protect the travelers on the highway. (*People* v. *Rubenfeld*, 254 N. Y. 245.)

POUND, Ch. J. Plaintiffs are lessees of a parcel of land immediately south of the east approach to the Mid-Hudson Bridge at Poughkeepsie. They purposed to erect a large display sign or billboard thereon for advertising purposes in full view of travelers along the adjacent approach which is a part of the State highway. The State of New York is the owner of the fee of the highway. The defendant Greene, as State Superintendent of Public Works, for the purpose of blocking a view of the sign from the highway, purposed to construct a screen or shield on the highway in front of the billboard. The billboard would be about fifty-three feet long, ten feet high and thirty-five feet from the traveled part of the bridge approach, on a pronounced curve in a narrow road. It may be illuminated at night.

Plaintiffs have obtained a judgment restraining defendants from placing the screen in the highway where it would prevent motorists from seeing their sign. The courts below have held that the State may not lawfully erect the screen so as to obscure plaintiffs' sign; that it may not thus prevent plaintiffs from using their property for advertising purposes; and that the erection of the screen for the purpose of obscuring the billboard does not safeguard the traveler or serve any highway purpose.

When the fee of the highway has been transferred to the State, the State may use the highway for any public

purpose not inconsistent with or prejudicial to its use for highway purposes. (*Thompson* v. *Orange & Rockland Elec. Co.*, 254 N. Y. 366, 369.) The mere disturbance of the rights of light, air and access of abutting owners on such a highway by the imposition of a new use, consistent with its use as an open public street, must be tolerated by them and no right of action arises therefrom, although such use interferes with the enjoyment of their premises. (*Kane* v. *N. Y. Elev. R. R. Co.*, 125 N. Y. 164, 176.) The highway must, however, be kept open as a public highway and not diverted to wholly inconsistent uses. This right to have the highway kept open for light, air and access as well as for travel has been termed an " easement " but it is the right deduced by way of consequence from the purposes of a public street. (*Muhlker* v. *N. Y. & H. R. R. Co.*, 197 U. S. 544.)

Shall we, on this basis, imply as against the State an easement of visibility from the highway which arises from the necessity that the highway be " kept open;" hold that the screen would be an unlawful structure and that plaintiffs are entitled, by virtue of proximity to the highway, to protection from the injuries " to the easements of light, air, *view* and access belonging to them " which would result therefrom? (*Bradley* v. *Degnon Contr. Co.*, 224 N. Y. 60, 72; *Donahue* v. *Keystone Gas Co.*, 181 N. Y. 313, 319; *Muhlker* v. *N. Y. & H. R. R. Co.*, *supra*.) Or shall we invoke the principle that considerations of an esthetic purpose may enter into the reasons for improving a State highway and thus sustain the Superintendent of Public Works in his action if it has any direct relation to a highway purpose? (*Welch* v. *Swasey*, 214 U. S. 91, 108; *Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288, 300.)

We are dealing, not with a statute passed in the exercise of the police power of the State, prohibiting billboards on private property where the primary motive is esthetic (Public Esthetics and the Bill Board, 16 Cornell Law Quarterly, 151, 154), but with the act of the administra-

tive officer in constructing and controlling a State highway placed in his charge. The question is as to the limits of his authority. The State Superintendent of Public Works has control of the Mid-Hudson Bridge (Laws of 1923, ch. 900, § 3; Laws of 1927, ch. 88, § 4) and has general supervision over all State highways. (Highway Law [Cons. Laws, ch. 25], art. 2, § 15.) In the exercise of such supervision and control doubtless he may plant shade trees along the road to give comfort to motorists and incidentally to improve the appearance of the highway. By so doing he aims to make a better highway than a mere scar across the land would be. If trees interfere with the view of the adjacent property from the road, no right is interfered with. So if the Superintendent desires to shield the travelers on the highway from obnoxious sights of public nuisances or quasi-nuisances by the erection of screens more pleasing to the eye, he still acts within his jurisdiction. He aims to make the highway free from sights which would offend the public. No adjacent owner has the vested right to be seen from the street in his back-yard privacy. Again, if the purpose is to shut out from view scenes which might distract the attention of the driver of a car, the Superintendent may aim to make the highway safer for those who use it by erecting screens to keep the eye of the driver on the road as he may erect barriers to keep the car on the road on dangerous curves. All these things are as incidental to the construction and operation of the highway as are the matters of grade, materials or drainage.

Authorities are agreed that any considerations, other than purely esthetic ones, which are relevant to the operation of the highway, may influence the Superintendent's action and, if such considerations exist, the fact that considerations of an esthetic nature also exist does not take away his authority to act. Our lower courts have differed on the question whether artistic considerations alone are sufficient to warrant the general prohibition of

billboards on private property (*People* v. *Wolf*, 127 Misc. Rep. 382; 220 App. Div. 71; appeal dismissed, 247 N. Y. 189), and this court has said: " One of the unsettled questions of the law is the extent to which the concept of nuisance may be enlarged by legislation so as to give protection to sensibilities that are merely cultural or aesthetic." (*People* v. *Rubenfeld*, 254 N. Y. 245, 248.)

The Supreme Court of the United States has held that billboards may be prohibited in the interest of the safety, morality, health and decency of the community (*Cusack Co.* v. *City of Chicago*, 242 U. S. 526), and that they may be excluded from residence districts by zoning ordinances. (*Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365.)

Beauty may not be queen but she is not an outcast beyond the pale of protection or respect. She may at least shelter herself under the wing of safety, morality or decency. It is, however, needless for the decision of the case to delimit her sphere of influence. The immediate question is not whether the State Superintendent of Public Works may, as an incident to his power of highway control, shut off from the eyes of the traveling public all advertising signs erected on private property nor is it whether the highway, created by public money, is controlled in part by those who desire to thrust upon the notice of the public the ostentatious display of private advertising from the adjoining premises for their own profit wherever they see fit; nor is it whether advertisers have a right, independent of environment, to have a highway " kept open " visually so that their signs may compel the eye of the passer-by. The question is whether the Superintendent was justified in erecting this screen to shut off the view of this sign in this location.

The elevated railway cases (*Story* v. *N. Y. Elev. R. R. Co.*, 90 N. Y. 122; *Lahr* v. *Metropolitan Elev. R. R. Co.*, 104 N. Y. 268), much relied on herein, went far to protect adjacent owners whose light, air and access had been interfered with by the construction of the elevated railroads in

front of their premises on the city-owned street. Some expressions in the opinions, read apart from the context, may suggest that any disturbance in such a street, not essential to highway purposes, suffered by the owner of an adjacent lot, creates a cause of action in his favor. They do not go to that extent. This court has never discussed easements of prospect or view, although it has mentioned them. Doubtless they may exist in certain cases. Great diminution of values may impel the courts to find a remedy when the street, although still a street, is partially closed to common street uses, but every diminution of value does not call for compensation. (*Muhlker v. N. Y. & H. R. R. Co., supra.*) Aside from the elevated railway cases, it is generally held that any change in the street for the benefit of public travel is a matter of public right as against the private right of the adjacent owner. The highway in suit is still " open to " the plaintiffs. It is not closed to them in any sense. It is the same highway that it would be without the screen.

From new conditions of travel new rights and obligations arise. The State creates new values for adjacent owners by building good roads. It does not then destroy old values, as happened in the case of the elevated structures, by blocking the roadway. No contract exists between the State and the owner that the latter may forever use his property to erect billboards anywhere along the highway; no right *in rem* exists, for the adjacent owner has no title to the highway. As one of the sovereign people for whom the title is held in trust the adjacent owner may compel the State to limit the use of the highway to highway purposes when a proposed excess use would be to his disadvantage.

Some future case may call for new definitions of highway purposes. New highways and new uses arise. Enough for this decision to say that the Superintendent of Public Works may act reasonably in his discretion for the benefit of public travel in screening a billboard at a danger-

ous curve when by its enormity such a structure may divert the attention of the motorist from the road. He then interferes with no property right of the adjacent owner and he should not be interfered with by the courts. If, incidentally, the outlook from the road is improved by shutting off the view of the billboard, so much the better. We deal with the act and not with the motive. An act, lawful in itself and not done with malice, will not be restrained nor will the courts assume the management and control of State highways.

The judgments should be reversed and the complaint dismissed, with costs in all courts.

CRANE, LEHMAN, KELLOGG, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgments reversed, etc.